UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

IN THE MATTER OF THE
APPLICATION OF PAUL BACKER,

               Petitioner,

for an order pursuant to 3102(c) of the Civil
Practice Laws and Rules to compel
disclosure from,

THE UNITED STATES DEPARTMENT
OF STATE, by its Chief Officer the
HONORABLE HILLARY RODHAM
CLINTON,

               Respondent,

the identity of defendants JOHN DOE and/or
JANE DOE being unknown to the petitioner,
in an action to be commenced,
               Defendants.

10 Civ. 0862  (PGG)

**MEMORANDUM OPINION
& ORDER**

PAUL G. GARDEPHE, U.S.D.J.:

        Petitioner Paul Backer commenced this proceeding in Supreme Court for

the State of New York, New York County, seeking an order pursuant to New York Civil

Practice Law and Rules § 3102(c)[1] to, inter alia, compel the United States Department of

State ("DOS") to produce certain documents relating to the termination of his

employment at the International Science and Technology Center ("ISTC").  The New

York Supreme Court issued an Order to Show Cause on January 14, 2010, instructing

DOS to appear at a hearing and show cause why the court should not grant Backer's

§ 3102(c) application.  (Notice of Removal, Ex. A ("Order to Show Cause")).

---

[1] CPLR § 3102(c) allows parties to obtain pre-complaint discovery.  CPLR § 3102(c)
("Before an action is commenced, disclosure to aid in bringing an action, to preserve
information or to aid in arbitration, may be obtained, but only by court order.").

On February 3, 2010, DOS filed a notice of removal pursuant to 28 U.S.C. §§ 1442(a)(1) and 1446(b) (Notice of Removal ¶ 3) (Docket No.1).  On February 24, 2010, DOS filed a motion to dismiss the instant proceeding pursuant to Fed. R. Civ. P. 12(b)(1) and (6), and moved to vacate the New York Supreme Court's Order to Show Cause.  (Docket No. 4)  Thereafter, Backer filed a motion to remand this case to the New York Supreme Court. (Docket No. 14)

For the reasons stated below, Backer's motion to remand will be DENIED, and DOS's motion to dismiss and to vacate the Order to Show Cause will be GRANTED.

## BACKGROUND

Petitioner Paul Backer was hired in 2007 for a four-year term as the Chief Legal Officer of the ISTC, which is based in Moscow.  (Backer Aff. ¶ 12)  ISTC was formed by the United States, Canada, the Russian Federation, Japan, and the European Union to support civilian scientific endeavors employing former weapons scientists of the Soviet Union.  The goal of the ISTC is to reduce the proliferation of nuclear weapons. The organization has received hundreds of millions of dollars from DOS, from other federal agencies, from European Union agencies, and from EU member states.  (Id. ¶ 13)  ISTC hired Backer after DOS had nominated him for consideration.  (Id.)

On March 11, 2008, Backer received an email from Andrew Goodman, a DOS official, informing him that a very serious matter had been brought to DOS's attention that needed to be addressed immediately.  Backer was instructed to return to Washington, D.C. at once, and was told that his "activities at the ISTC are suspended."

(Id. ¶ 38; Notice of Removal, Ex. B (Mar. 11, 2008 email from Andrew Goodman to Paul Backer))

Goodman sent a later email on March 11, 2008, in which he indicated that Backer's supervisor had advised Goodman that he had concerns about Backer's job performance.  Goodman's email further stated that, "[g]iven that opinion and because some of the reports that I received were rather inflammatory, there is a clear need for us to examine the situation."  (Notice of Removal, Ex. C (Mar. 11, 2008 email from Andrew Goodman to Paul Backer))

In a March 23, 2008 email, Acting ISTC Executive Director Sergey Vorobiev formally suspended Backer.  In that email, Vorobiev stated that he had received a letter from DOS reporting allegations against Backer that implicated the security of the Center and its staff.  Vorbiev's email further stated that the allegations against Backer, if true, "may constitute violations of your Personal Services Contract, ISTC Ethics policies and other related Administrative Regulations."  (Notice of Removal, Ex. E (Mar. 23, 2008 email from Sergey Vorobiev to Paul Backer))  Vorobiev wrote that DOS had requested Backer's immediate suspension until the matter was resolved.  (Id.)

Backer claims that he does not know the substance of the allegations made against him, does not know who made the allegations against him, and that his efforts to discover the reasons for his suspension have been unsuccessful.  (Backer Aff. ¶¶ 49, 51, 64)

In March 2009, ISTC sent a letter to Backer stating that his contract with ISTC would expire in August 2009 and would not be renewed.  (Notice of Removal, Ex. F (Mar. 27, 2009 Letter from Adrian van der Meer to Paul Backer))  The letter explained

that "[y]our current suspension is justified because of the fact that the safety and security of ISTC staff was endangered in February-March 2008 due to your personal behavior. There can be no lifting of the restrictions.  That behavior is the sole reason for the suspension."  (Id.)  Backer contends that the statements in this letter are false and that he never endangered anyone.  (Backer Aff. ¶ 59)  Backer complains that his termination from ISTC was "based on a lie" and that he was "given no opportunity to rebut and to confront the so-called evidence against [him]."  (Id. ¶ 61)

On January 14, 2010, Backer obtained an Order to Show Cause in New York Supreme Court requiring DOS to show cause why it should not be required

> (1) to produce copies of documents, including emails, relating to petitioner's causes of action against certain unknown defendants (the "Unknown Defendants") for, among other things, a) tortious interference with petitioner's services contract as Chief Legal Officer for the [ISTC] in Moscow . . . b) defamation, per se, and c) possibly other tortious conduct, and 2) to produce information related to the identities and last known addresses for those individuals who may be Unknown Defendants. . . .

(Notice of Removal, Ex. A)[2]  In the papers accompanying his CPLR § 3102(c) motion, Backer states that he intends to bring suit "against those liable or potentially liable" and describes that this group "may include DOS and the individual officials of DOS who acted erroneously and injuriously against me, as well as others."  (Backer Aff. ¶ 68)

## DISCUSSION

Pending before the Court are Backer's motion to remand and DOS's motions to dismiss and to vacate the New York Supreme Court's Order to Show Cause.

---

[2]  The discovery requests accompanying Backer's order to show cause make clear that he is seeking the production of a wide variety of documents from DOS, including, inter alia, all communications between certain named DOS employees and ISTC's Board of Governors concerning Backer and his suspension and termination, the failure of ISTC to account properly for monies, ISTC's alleged wrongful termination and ill treatment of staff, and GAO reports concerning ISTC.

Because this Court must first determine whether this action was properly removed, Backer's motion will be addressed first.

## I.   PETITIONER'S MOTION TO REMAND

Backer has moved to remand this action to New York Supreme Court, arguing that removal was "premature and improper" because "the removal statute requires that an initial pleading exist before a case is ripe for removal." (Pet. 4/7/10 Br. 2) Backer contends that his CPLR § 3102(c) motion for pre-complaint discovery does not constitute an "initial pleading" under the removal statute and that therefore remand is required. (Id.) He further contends that – even if a CPLR § 3102(c) proceeding is removable – this action was removed prematurely because service of a CPLR § 3102(c) motion on a party does not – standing alone – expose that party to potential civil liability. (Id. at 15-16)

### A.   The CPLR § 3102(c) Proceeding was Properly Removed

Title 28, United States Code, Section 1446(b) states that

> notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based.

28 U.S.C. § 1446(b).

In Christian, Klein & Cogburn v. Nat'l Ass'n of Sec. Dealers, 970 F. Supp. 276, 278 (S.D.N.Y. 1997), the NASD was served with an order to show cause why pre-complaint discovery should not be granted pursuant to CPLR § 3102(c). An attorney's affirmation accompanying the order to show cause stated that "discovery was necessary so that petitioner could frame a complaint for purposes of a contemplated civil action [based on unfair trade practices, antitrust and securities law violations, and breach

of contract]."  Pursuant to 28 U.S.C. § 1446(b), the NASD removed the action, "claiming

that petitioner's [contemplated] complaint would seek judicial review of the NASD's

performance . . . as a [self-regulatory organization] under federal law."  970 F. Supp. at

277.  Following removal, petitioner moved for remand, arguing that the court lacked

subject matter jurisdiction and that the "notice of removal was premature because it did

not constitute an initial pleading under 28 U.S.C. § 1446(b)."  Id.

       Then-Judge Sotomayor began her analysis by noting that Section 1446(b)

"not only refers to the removal of 'actions' based on 'initial pleadings,' but also to the

removability of 'proceedings' based on 'initial pleadings.'"  Id. at 278 (quoting 28 U.S.C.

§ 1446(b)).  In addition to requiring initiation of an action or proceeding, Judge

Sotomayor found that Section 1446(b) requires that the initial pleading "set forth a 'claim

for relief.'"  The court held, however, that the order to show cause filed in Christian

"fulfills both of these requirements."  Id.

       Judge Sotomayor ruled that under CPLR § 304, when petitioner "served

NASD with an order to show cause why discovery pursuant to C.P.L.R. § 3102 should

not issue, [petitioner] initiated a proceeding under New York law."  Id.  With respect to

the second prong of the analysis – "whether the 'initial pleading' at issue, i.e., the order to

show cause, set forth a claim for relief" – Judge Sotomayor found that this requirement

"implicates the concept of notice:  the very purpose of an 'initial pleading' prior to

removal is to give the adverse party proper notice, and to establish the nature of the

claim, and whether or not there is, in the constitutional sense, a case or controversy."  Id.

(quotation marks and citation omitted).  The court noted that in its petition, Christian

"directly invokes violations of federal securities laws as a basis for its pre-complaint

discovery" and accordingly "gives respondent adequate notice that at least some of petitioner's claims will arise under the laws of the United States – making the district court the proper forum for adjudication of that claim. . . ." Id.  Accordingly, because petitioner's § 3102(c) motion had put the defendant on notice of a federal claim, and because the filing of that motion constituted the initiation of a "proceeding," Judge Sotomayor concluded that removal was appropriate, denied the motion to remand, granted the motion to deny pre-complaint discovery, and dismissed the case.

Dublin Worldwide Productions (USA), Inc. v. Jam Theatricals, Ltd., 162 F. Supp. 2d 275, 277 (S.D.N.Y. 2001), likewise involved the removal of a CPLR § 3102(c) proceeding and a subsequent motion for remand.  The petitioner, like Backer and the petitioner in Christian, argued that "a proceeding under C.P.L.R. 3102(c) is not itself a civil action but only . . . a proceeding for the purpose of obtaining discovery 'before an action is commenced.'" Dublin, 162 F. Supp.2d at 277.  Judge Rakoff likewise held that a CPLR § 3102(c) proceeding is removable, stated that he "agree[d] with Christian," but noted that he "would reach the same result even without reference to § 1446(b)." Id.

Judge Rakoff noted that,

[u]nder New York law, a petitioner can seek "pre-action discovery" under 3102(c) only if the petitioner already has an existing cause of action against the respondent and is simply seeking early discovery for one of the reasons specified in 3102(c), *viz*, ". . .to aid in bringing an action, to preserve information or to aid in arbitration. . . ." C.P.L.R. 3102(c) . . . . [T]his requirement is enforced by New York courts with particular strictness where, as here, 3102(c) is sought to be invoked "to aid in bringing an action." See N.Y.C.P.L.R. 3102, Supplementary Practice Commentary by David D. Siegel (McKinney 2001).  A request for discovery under C.P.L.R. 3102(c) is therefore ancillary to an existing cause of action that the requesting party proposes to bring, and it is the elements of that civil action, rather than the ancillary discovery request,

that should determine removability.  Were it otherwise, a party who
proposed (as here) to bring a civil action falling within federal jurisdiction
could evade the federal limitations on pre-action discovery by first
bringing a request for discovery under C.P.L.R. 3102(c) – precisely the
tactic Dublin tried here.

Id. at 277-78 (citations omitted).

In concluding that the § 3102(c) proceeding in Dublin was properly

removed, Judge Rakoff noted that the petitioner – prior to filing the § 3102(c) motion –

had threatened that it would file a "federal lawsuit against [respondent] in the Southern

District of New York" if respondent did not accede to petitioner's demand for $500,000.

"While not specified in the letter, it was obvious that such a lawsuit would comport with

the requirements of federal subject matter jurisdiction, since there was complete diversity

of citizenship between Dublin and Jam and the amount in controversy exceeded

$75,000."  Id. at 276.  Under these circumstances, the court concluded that the action was

properly removed and denied the motion to remand.  Id.

Under Christian and Dublin, it is clear that Backer's action was properly

removed and that the motion to remand should be denied.  Those cases establish that a

§ 3102(c) proceeding is subject to removal where the petitioner has put the respondent on

notice that it intends to bring claims that provide a basis for the exercise of federal

jurisdiction.

Here, the affirmations Backer filed in support of his § 3102(c) petition

make clear that he intends to bring claims against the United States based on alleged

tortious conduct by DOS and DOS employees.  Backer's counsel's affirmation states that

Backer intends to bring a lawsuit alleging tortious interference with his services contract

with ISTC, defamation, and "possibly other tortious conduct."  (Brill Aff. ¶ 1).  In his

own affirmation, Backer states that he "intend[s] to bring suit against those liable or potentially liable. . . . Such defendants may include DOS and the individual officials of DOS who acted erroneously and injuriously against me, as well as others." (Backer Aff. ¶ 68)  Backer further states that "DOS employees, including Mr. Goodman, coordinated and promoted this policy to deprive me of due process and punish me as a whistleblower." (Backer Aff. ¶ 62)

In his memorandum of law in support of his § 3102(c) application, Backer argues that his affirmation demonstrates

> tortious interference with his contract rights under his ISTC services contract since DOS officials intentionally disrupted [his] ability to perform his obligations as [Chief Legal Officer] under his contract by (i) causing him to be suspended . . . when DOS was not in a contractual relationship with him or was his client; (ii) barring him from entering ISTC's premises and accessing his work email . . . (iii) by sequestering his personal archives and documents, and personal property, and (iv) by refusing to provide any explanation for his suspension and lack of access to his work documents and property, so as to defend himself under his contract.

(Notice of Removal, Ex. G ("Memorandum of Law in Support of Application for Pre-Action Discovery Pursuant to CPLR 3102(c)") at 4.)

Similarly, Backer has filed a Standard Form-95 administrative claim ("SF-95 form") with DOS in which he states that he intends to bring claims against DOS for, inter alia, "[n]egligent, tortious, fraudulent acts," and "violation of constitutional due process."[3]  (Toole Decl. ¶ 3; Toole Aff., Ex. A (Mar. 11, 2008 SF-95))  Under a section in the form entitled "Basis of Claim," Backer states that his rights were violated "by and

---

[3] The Court may consider this document because, "[i]n resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings."  Luckett v. Bure, 290 F.3d 493, 496-97 (2d Cir. 2002).

as a result of actions by DOS, [and] its servants and agents. . . ."[4]  (Toole Aff., Ex. A (Mar. 11, 2008 SF-95))  In sum, there is overwhelming evidence that Backer intends to bring a lawsuit alleging that DOS and DOS employees engaged in tortious conduct that caused him to suffer damages.

It is equally clear that the common law tort claims Backer intends to assert against DOS and DOS officials acting within the scope of their employment can only be brought against the United States under the FTCA, and federal courts have exclusive jurisdiction over such matters.  See 28 U.S.C. §§ 1346(b), 2679; Celestine, 403 F.3d at 80 (2d Cir. 2005) ("The FTCA waives the United States's sovereign immunity for certain classes of torts claims and provides that the federal district courts shall have exclusive jurisdiction over damages claims against the United States for injury or loss of property, or for personal injury or death 'caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment.'" (quoting 28 U.S.C. § 1346(b)(1)); Tota v. Ferri, 00-CV-0436E, 2001 U.S. Dist. LEXIS 2442, at *8 (W.D.N.Y. Mar. 8, 2001) ("The Federal Tort Claims Act is the exclusive mechanism to bring a common law tort claim against the United States." (citing United States v. Smith, 499 U.S. 160, 166 (1991)).  Accordingly, the action contemplated by Backer against DOS and DOS officials would clearly fall within federal jurisdiction.

---

[4]  The filing of such an administrative claim is a prerequisite to filing a lawsuit against the United States under the Federal Tort Claims Act.  See 28 U.S.C. § 2675(a); Celestine v. Mount Vernon Neighborhood Health Ctr., 403 F.3d 76, 82 (2d Cir. 2005) ("The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."); Keene v. United States, 700 F.2d 836, 840 (2d Cir. 1983) (noting that the FTCA "requires that a claimant against the federal government file an administrative claim with the appropriate agency prior to institution of suit.").

Under these circumstances, Backer's § 3102(c) proceeding was properly removed to federal court.[5]

### B.     Removal Was Not Premature

Backer argues, in the alternative, that remand is appropriate because removal was premature. Removal here was "predicated on the allegation of a colorable federal defense," Mesa v. California, 489 U.S. 121, 129 (1989) – namely the sovereign immunity of the United States. (See Notice of Removal ¶¶ 3, 5) Backer contends that "the service of the CPLR 3102 Motion on the State Dept. does not, by itself, expose the State Dept. to potential civil liability," "does not and cannot restrict, impair, or interfere with the State Dept. as a federal agency," and that accordingly "no federal jurisdiction can attach to this case in its present posture." (Pet. 4/7/10 Br. 15-16) DOS argues, however, that removal was not premature because "[t]here is a confrontation now: a

---

[5] Bryan v. Am. W. Airlines, 405 F. Supp. 2d 218 (E.D.N.Y. 2005), relied on by Backer, is not to the contrary. In Bryan, the court granted a remand motion where the petitioner argued that his CPLR § 3102(c) application was filed "for the limited purpose of obtaining discovery to identify the appropriate parties . . . [to the] contemplated action." 405 F. Supp. at 221. The court concluded that remand was appropriate because (1) "Bryan's petition . . . neither implicates substantive federal law, nor does it contain the level of detail present in the [Christian] affirmation"; (2) "Bryan has neither identified all of the proper parties to sue, nor has he, subject to identifying those parties, asserted any specific claims against those parties"; (3) there was no evidence that Bryan was "attempting to evade the federal limitations on pre-action disclosure"; (4) "once a complaint is filed, [it] will likely be a garden variety state personal injury claim which implicates no substantive federal law"; and (5) "the requested discovery is likely to reveal that one of the contemplated parties will destroy complete diversity, thereby eliminating any basis for federal jurisdiction." Id. at 221-22.

None of the factors cited in Bryan are present here. Unlike in Bryan, the detailed papers Backer submitted in support of his § 3102(c) application clearly implicate substantive federal law – the FTCA; Backer has asserted specific claims against DOS and DOS employees, including tortious interference with contract and defamation; and Backer's proposed claims can only be heard in federal court. Moreover, given the breadth of the pre-complaint discovery sought by Backer (see n. 2 supra), his application can only be read as an attempt to evade the federal limitations on pre-complaint discovery.

federal agency and its employees are the subject of a state court order, and, pursuant to Section 1442(a)(1), they are entitled to have a federal court consider their defense that sovereign immunity insulates them from producing discovery in response to that state court order."  (Resp. 5/12/10 Br. 10)

        Title 28, Section 1442(a)(1) authorizes the removal of any "civil action . . . commenced in a State court against . . . [t]he United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office . . . ."  28 U.S.C. § 1442(a)(1).

        Removal under Section 1442(a)(1) may be appropriate even where no complaint or lawsuit against the United States, a U.S. agency, or the employee of a U.S. agency has been filed.  For example, "Section 1442(a)(1) confers removal jurisdiction over a proceeding to enforce a subpoena issued by a state court where removal is 'predicated on the allegation of a colorable federal defense.'"  Pollock v. Barbosa Grp., Inc., 478 F. Supp. 2d 410, 412 (W.D.N.Y. 2007) (quoting Mesa, 489 U.S. at 129) (citing Brown & Williamson Tobacco Corp. v. Williams, 62 F.3d 408, 414-15 (D.C. Cir. 1995) (holding that removal jurisdiction exists under § 1442(a) where Congressmen claimed immunity from state court subpoena based on the Speech or Debate Clause of the U.S. Constitution); Smith v. Cromer, 159 F.3d 875 (4th Cir. 1998) (case removed pursuant to § 1442(a) where Department of Justice employees refused to testify in response to state court subpoena); Edwards v. United States Dep't of Justice, 43 F.3d 312 (7th Cir. 1994) (case removed pursuant to § 1442(a) where Department of Justice refused to produce FBI surveillance reports in response to state court subpoena)); see also Voyles v. SmithKline

Beecham Corp. (In re Collins), 524 F.3d 249, 251 (D.C. Cir. 2008) ("Thus, as a 'person acting under' an officer of the Smithsonian, Voyles may remove a 'civil action' against his actions 'under color of such office.'  We have interpreted 'civil action' as including state subpoena proceedings.").

State of Indiana v. Adams, 892 F. Supp. 1101 (S.D. Ind. 1995) and State of Alabama v. Stephens, 876 F. Supp. 263 (M.D. Ala. 1995), cited by Backer, are easily distinguished.

In Adams, the lawyer for a criminal defendant issued deposition subpoenas to FBI technicians.  After the state court denied the Government's motion to quash, the Government removed the subpoena-related portion of the state court action to federal court.  The case presented the question "whether a subpoena, standing alone, even after the denial of a motion to quash, is sufficient to constitute commencement of a civil or criminal action against the officials involved so as to justify removal."  Id. at 1104. The court noted that "[a] subpoena is issued by the clerk of the court at the mere request of a party," that obtaining a subpoena was "purely a ministerial process," and that "[t]here is no judicial involvement in or sanction of the process at the time a subpoena is issued."  Id.

The court further found that the denial of the motion to quash did not constitute sufficient judicial action to justify removal.  In reaching this conclusion, the court noted that denial of the motion to quash had "no effect on the status of this case," because the subpoenas were merely a demand, and "a court decision finding no defect in the subpoenas sufficient to dictate they be quashed results in no change in the status quo." Adams, 892 F. Supp. at 1106 n.4.  Denying the motion to quash merely "allows the

subpoena to continue to operate as a 'demand,'" and "no action subject to removal

. . . will have been commenced . . . until the state court initiates an act to force [the FBI

technicians] to comply with the subpoenas issued to them. . . ."  Id.  Because there was no

judicial ruling containing "language of compulsion or order of compliance," and because

the defendant had not "applied for an order from the state court . . . seeking to compel the

attendance of [the FBI technicians] at the depositions," "no action has been 'commenced'

which may be removed to this court," and the court granted the motion to remand.  Id. at

1105.

Similarly, in State of Alabama v. Stephens, 876 F. Supp. 263 (M.D. Ala.

1995), the court concluded that removal was premature where the proceeding removed

involved an attorney-issued subpoena that had not been obtained through a judicial order.

Unlike in Adams and Stephens, here there has been direct judicial

involvement in the form of an order to show cause issued by the state court directing the

appearance of DOS at a hearing.  The order requires DOS to show cause why it should

not be compelled to produce certain documents to Backer.  DOS is not free to ignore the

state court's order, which may fairly be viewed as the initiation of a process aimed at

forcing compliance with Backer's discovery demands.  In sum, the court order obtained

by Backer is not comparable to the attorney-issued subpoenas discussed in Adams and

Stephens.  Indeed, the pre-complaint discovery sought by Backer under § 3102(c)

requires judicial involvement, because it can be authorized "only by court order."  CPLR

§ 3102(c).

Moreover, Backer's argument that any removal petition by DOS is

premature "unless and until such enforcement proceedings blossom into either contempt

proceedings or something comparably stringent" (4/7/10 Pet. Br. 16) has been rejected.

Brown & Williamson Tobacco Corp. v. Williams, 62 F.2d 408 (D.C. Cir. 1995), makes

clear that DOS is not required to go into contempt in order for there to be a basis for

removal.  In that case, plaintiff argued that court-authorized subpoenas issued to certain

Congressmen did not provide an adequate basis for removal under 28 U.S.C.

§ 1442(a)(1), because no "civil action or criminal prosecution" had been brought against

the Congressmen.  The Court held, however, that the Congressmen did not have to go

into contempt in order to have the merits of their alleged federal privilege claim be heard

by a federal court:

> Once the subpoena is issued, a clash between state power and the federal
> official appears to be naturally inevitable.  Certainly in any case in which
> the officer . . . seeks removal, we can assume the officer would be
> prepared to force the matter to a contempt proceeding – at which point
> removal is clearly available.  Appellant has not suggested any reason why
> Congress would have wished that confrontation to be actually ignited
> before removal.  We think, therefore, that the officer's "act," declining to
> comply with the subpoena, can be presumed to occur simultaneously with
> the removal petition.  We do not believe Congress used the terms "civil
> action," "against," or "act" in the limited fashion that appellant urges, but
> rather meant to refer to any proceeding in which state judicial civil power
> was invoked against a federal official.  Jurisdiction lies under § 1442(a).

Brown & Williamson, 62 F.3d at 415 (emphasis added).

Brown & Williamson makes clear that the critical issue in determining

removability is whether "state judicial civil power was invoked against a federal official."

Id. at 415; see also Nationwide Investors v. Miller, 793 F.2d 1044, 1047 (9th Cir. 1986)

(per curiam) ("At least part of the purpose of § 1442(a)(1) is to prevent state courts from

unlimited exercise of their subpoena power against federal officers upon pain of

contempt.  The form of the action is not controlling; it is the state's power to subject

federal officers to the state's process that § 1442(a)(1) curbs."); Cf. Angello v. St.

Augustine Ctr., Inc., No. 06 Civ. 0838E(Sc)(JTE), 2006 U.S. Dist. LEXIS 93428, at *5-6

(N.D.N.Y. 2006) (remanding action that had been removed pursuant to § 1442(a)(1)

because "there is no state process or judicial power that has been invoked against the

IRS" (citing Brown & Williamson, 62 F.3d at 415)).

        Here, "state judicial civil power was invoked against a federal [agency]."

DOS is already faced with an order to show cause compelling it to appear in state court to

contest the production of certain documents.  DOS asserts that its sovereign immunity

defense protects it from having to produce such documents or to appear in court to

contest that proceeding.  The confrontation discussed in Brown & Williamson, therefore,

already exists, and DOS is entitled to have a federal forum consider its defense.  See

Arizona v. Manypenny, 451 U.S. 232, 241 (1981) (noting that § 1442(a) was designed to

"ensure a federal forum in any case where a federal official is entitled to raise a defense

arising out of his official duties").  Backer's motion to remand will be denied.

## II.    RESPONDENT'S MOTION TO DISMISS

        DOS has moved to dismiss this action pursuant to Fed. R. Civ. P. 12(b)(1)

and (6), arguing that this Court's jurisdiction is derivative of the state court's jurisdiction,

and that because the state court lacked subject matter jurisdiction over this proceeding,

this action must be dismissed. (Resp. 2/24/10 Br. 2)  According to DOS, the state court

lacked subject matter jurisdiction because, as a federal agency, DOS is shielded by

sovereign immunity.  (Resp. 2/24/10 Br. 4)

        Under the doctrine of derivative jurisdiction, a federal court lacks

jurisdiction upon removal where the state court from which the action was removed

lacked jurisdiction.  See PT United Can Co. v. Crown Cork & Seal Co., 138 F.3d 65, 73

(2d Cir. 1998); Barnaby v. Quintos, 410 F. Supp. 2d 142, 143 (S.D.N.Y. 2005). "The derivative jurisdiction doctrine has its roots in the Supreme Court's decision in Lambert Run Coal Co. v. Baltimore & Ohio R.R . . . in which the Court stated that 'the jurisdiction of the federal court on removal is, in a limited sense, a derivative jurisdiction. If the state court lacks jurisdiction of the subject-matter or of the parties, the federal court acquires none, although it might in a like suit originally brought there have had jurisdiction.'" Barnaby, 410 F. Supp. 2d at 143 (quoting Lambert Run Coal Co. v. Baltimore & Ohio R.R., 258 U.S. 377, 382 (1922)).

　　　　Although the derivative jurisdiction doctrine was eliminated by Congress for purposes of removal under 28 U.S.C. § 1441, see Barnaby, 410 F. Supp. 2d at 143 ("[I]t is clear that 28 U.S.C. § 1441(f) . . . eliminated derivative jurisdiction for cases removed under 28 U.S.C. § 1441"), the doctrine remains viable as to § 1442(a)(1) removal.  See Palmer v. City Nat'l Bank of W. Va., 498 F.3d 236, 246 (4th Cir. 2007) ("Congress has eliminated the doctrine for cases removed under 28 U.S.C. § 1441, the general removal statute.  This abrogation, however, did not extend to cases removed under other provisions. . . . [O]ur precedent . . . dictates the application of the derivative-jurisdiction doctrine in cases removed under the federal-officer removal statute, 28 U.S.C. § 1442."); Smith v. Cromer, 159 F.3d 875, 879 (4th Cir. 1998) ("[A] federal court's jurisdiction upon removal under 28 U.S.C. § 1442(a)(1) is derivative of the state court jurisdiction, and where the state court lacks jurisdiction over the subject matter of the parties, the federal court acquires none upon removal, even though in a like suit originally brought in federal court, the court would have had jurisdiction."); In re Elko County Grand Jury, 109 F.3d 554, 555 (9th Cir. 1997) ("[B]ecause this case was removed

from state court pursuant to § 1442, our jurisdiction is derivative of the state court's jurisdiction."); Edwards v. U.S. Dep't of Justice, 43 F.3d 312, 315 (7th Cir. 1994) ("When a case is removed from a state court pursuant to 28 U.S.C. § 1442, the district court's basis for jurisdiction is only derivative of that of the state court."); Barnaby, 410 F. Supp. 2d at 143-46 (examining legislative history of 28 U.S.C. § 1441(f) and concluding that "Congress explicitly limited the elimination of derivative jurisdiction to cases removed under Section 1441").

Accordingly, this Court must decide whether the state court had jurisdiction over this action.  This inquiry turns on whether DOS's sovereign immunity applies in the context of a CPLR § 3102(c) proceeding.  If DOS is shielded by sovereign immunity, "waiver of sovereign immunity is a prerequisite to subject matter jurisdiction." Presidential Gardens Assoc. v. U.S. Dec. of Hous. and Urban Dev., 175 F.3d 132, 139 (2d Cir. 1999).  Backer has not offered any citation demonstrating that DOS has waived sovereign immunity in this setting.

It is "long settled law that, as an attribute of sovereign immunity, the United States and its agencies may not be subject to judicial proceedings unless there has been an express waiver of that immunity."  EPA v. Gen. Elec., 197 F.3d 592, 597 (2d Cir. 1999) (citations omitted).  "A judicial proceeding is considered brought against the sovereign if the result could serve 'to restrain the Government from acting, or to compel it to act.'"  Id. (quoting Dugan v. Rank, 372 U.S. 609, 620 (1963)).

A proceeding directing DOS to show cause why an order should not issue compelling document production from DOS is such a proceeding.  The order to show

cause issued by the state court has compelled DOS "to act"; it must appear for the show cause hearing or risk contempt.

While this Court is not aware of any case that has addressed the applicability of the sovereign immunity defense in the context of CPLR § 3102(c), numerous courts have held that state court actions to compel the production of documents from a federal agency, or to compel the testimony of federal officials, are invalid for lack of state court jurisdiction absent a waiver of sovereign immunity. See, e.g., Smith, 159 F.3d at 878 (affirming dismissal for lack of jurisdiction where state court issued subpoenas to Department of Justice employees for documents and testimony in a state criminal prosecution; "[w]here an agency has not waived its immunity to suit, the state court (and the federal court on removal) lacks jurisdiction to proceed against a federal employee acting pursuant to agency direction"); Houston Bus. Journal, Inc. v. Office of the Comptroller of the Currency, 86 F.3d 1208, 1211 (D.C. Cir. 1996) (state court issued order to compel production of documents based on subpoena and the Comptroller filed notice of removal; court concluded that "district court lacked subject matter jurisdiction to hear motion to compel," noting that "[i]n state court the federal government is shielded by sovereign immunity, which prevents the state court from enforcing a subpoena"; under the doctrine of derivative jurisdiction, "the federal court . . . is also barred from enforcing a subpoena against the federal government." (citations omitted)); Sparks, 978 F.2d at 235 ("[M]yriad cases involving a § 1442(a) removal of a state subpoena proceeding against an unwilling federal officer have held that the sovereign immunity doctrine bars enforcement of the subpoena.  These courts have quashed state court subpoenas or dismissed contempt proceedings that were removed on the ground that a court, state or

federal, lacks jurisdiction to enforce a subpoena against an unwilling sovereign."
(citations and footnote omitted));  <u>Pollock</u>, 478 F. Supp. 2d at 413-14 (state court issued
subpoena to compel federal agencies to release records; after removal, federal court
dismissed action because it "lack[ed] jurisdiction to enforce the subpoena" absent an
"express waiver of sovereign immunity").

            Because this action was removed pursuant to 28 U.S.C. § 1442(a), this
Court's jurisdiction is derivative of the state court's jurisdiction.  The state court lacked
jurisdiction over Backer's CPLR § 3102(c) action, however, because there has been no
waiver of sovereign immunity.  Accordingly, this Court lacks subject matter jurisdiction
over this action and it must be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).[6]

---

[6]  Even if this Court had subject matter jurisdiction, this action would still be dismissed,
because there is no right to pre-complaint discovery under the Federal Rules of Civil
Procedure, and it is the Federal Rules, and not the CPLR, that governs after removal.  <u>See</u>
<u>Luethke v. Seagram Co. Ltd.</u>, No. 00 Civ. 7946 (DC), 2000 WL 1880324, at *3
(S.D.N.Y. Dec. 28, 2000) ("[P]laintiff's reliance on C.P.L.R. § 3102(c) for 'pre-action'
discovery is misplaced.  Now that the case has been removed to this Court, the Federal
Rules of Civil Procedure govern discovery and the C.P.L.R. does not apply.").

## CONCLUSION

For the reasons stated above, Backer's motion to remand is DENIED and

DOS's motion to dismiss and vacate the state court Order to Show Cause is GRANTED.

The Clerk of the Court is directed to terminate the following motions: 10

Civ. 0862 (PGG) Docket No. 4 and Docket No. 14.  The Clerk of the Court is further

directed to close this case.

Dated: New York, New York
       July 16, 2010

SO ORDERED.

Paul G. Gardephe
United States District Judge